**No. 4285.**

## PALMER V. RULAND

1. EVIDENCE—MINUTES OF CONVENTION—PARTIAL TRANSCRIPT.

   Where the minutes of a political convention were lost a partial transcript that was shown to contain everything that the minutes contained on the question of adjournment was admissible in evidence to show that the motion to adjourn mentioned no place for the adjourned meeting.

2. POLITICAL CONVENTIONS—ADJOURNED MEETING—PLACE OF MEETING—POWER TO RESCIND FORMER ACTION.

   Where a convention adjourns to a future day without stating a place of meeting the proper place for meeting of the adjourned session is at the same place where the former meeting was held. And where a convention after making a nomination adjourned to a future day without naming the place and on that day met at another town and attempted to rescind its former action and nominated a different person for the same office, unless all the delegates were present and participated the latter nomination was invalid and the former was entitled to be placed upon the official ballot.

*Upon Review from the District Court of Eagle County.*

Mr. H. T. SALE, for petitioner.

Messrs. PATTERSON, RICHARDSON & HAWKINS, for respondent.

*Per Curiam.*—Petitioner claims that at a meeting of a delegate convention of the Democratic party of Eagle county, held at Gilman, September 29, 1900, he was nominated for the office of representative from that county to the thirteenth

general assembly.

That he was placed in nomination before such convention, and nominated by a unanimous vote is clear. Whether or not this action was subsequently rescinded is the important question to determine. It appears that on Monday, October 1st, a number of the delegates participating in the Gilman convention convened at Red Cliff, and there nominated the respondent Willetts. Petitioner claims that this action was without authority, for the reason that the adjournment of the convention at Gilman after his nomination was until Monday following, at twelve o'clock, without specifying any place. For the purpose of establishing the action of the Gilman convention in this respect, petitioner offered in evidence a copy of the minutes of the secretary, which was refused, for the reason that he stated that the copy offered, though in his handwriting, was not a full and complete copy of all the proceedings. It does appear from his evidence, however, that the copy offered was a transcript of the proceedings in so far as it related to the question of adjournment. It also appears that the original minutes were lost, or at least that the secretary was unable to find them. The proof was sufficient regarding the loss of the original minutes to admit secondary evidence regarding their contents. Petitioner only sought to introduce the copy in his possession for the purpose of showing what was therein stated regarding the adjournment. As it appeared from the evidence of the secretary that this copy contained all which appeared in the original on this subject, it should have been admitted, although it was not a complete transcript of the entire minutes. The trial court found that the Gilman convention adjourned to meet at Red Cliff. The minutes on this subject state: "Motion. We adjourn until 12 o'clock noon on Monday, October 1st. Carried. Agreed to meet in Red Cliff." The secretary testified: "My recollection is, the motion to adjourn was that we adjourn to 12 o'clock Monday, October 1st."

"Q.  Was that carried.

"A.  Yes, sir.

"Q.  Without any amendment?

"A.  Without any amendment, I believe."

When further interrogated as to whether he would state positively that there was not an amendment, he stated that he did not record one on the minutes.

Petitioner, when asked to state the motion under which the adjournment took place, stated that it was in the following language: "I move you that we adjourn until 12 o'clock Monday next."

Mr. Buchholz was interrogated, and answered as follows:

"Q.  Can you state from your memory the motion that was made to adjourn the convention?

"A.  There was a motion made to adjourn.

"Q.  State it as near as you can,—the motion that was made.

"A.  Well, I really can't recall just how the motion was.

"Q.  Did the convention adjourn?

"A.  Yes, sir.

"Q.  Did it adjourn to meet at any other place than Gilman?

"A.  Why, I understood that they were going to meet Monday, at 12 o'clock, at Red Cliff.

"Q.  When did you understand that; at what time did you get that understanding, and from whom? Wasn't it after the convention adjourned, or was it before?

"Objected to as leading.  Objection sustained.

"The Court: . Ask when he understood it?

"Q.  Was it before or after?

"A.  O, it was about the time of the adjournment.

"Q.  Do you remember whether there was a motion made there to this effect: That the convention adjourn to meet at the town of Red Cliff on Monday; was there any such motion as that made?

"A. Well, I think there was; that there was a motion made to meet in Red Cliff.

"Q. Can you state at what time you think a motion like that was made, whether before the convention adjourned, or afterwards?

"Objected to.

"The Court: You cannot answer that. The motion could not be made afterwards. The objection is sustained."

Mr. Fuller was interrogated and answered as follows:

"Q. Were you there at the time that convention adjourned?

"A. Yes, sir.

"Q. State to the court in what manner they adjourned; what motion was put to adjourn?

"A. Well, I don't know as I can state the exact words of the motion. There was a motion made to adjourn until Monday at 12 o'clock.

"Q. Was there anything said about the time or place they were to meet at 12 o'clock on Monday in that motion?

"A. In that motion I don't think there was, as I recollect it.

\*      \*      \*      \*      \*      \*      \*

"Q. On the question of the continuation of the convention, was there a motion made in the convention in Gilman to adjourn to meet at Red Cliff?

"A. I don't know that there was, and I would not swear that there was not.

"Q. Don't you know there was not?

"A. There was a motion made to adjourn to Monday at 12 o'clock, of course. In our haste to go out—it was late—I didn't pay strict attention. I understood before I did get out of the hall there was a motion to meet at Red Cliff."

The evidence of the chairman of the Gilman convention on the subject of adjournment was as follows:

"Q. Do you recollect the motion that was made to ad-

journ?

"A.   No, sir.

"Q.   You cannot give the motion that was made to adjourn?

"A.   No. Kept me too busy; they were raising objections.

*     *     *     *     *     *     *

"Q.   Do you remember the motion made in Gilman to adjourn that convention?

"A.   I do not remember it.

"Q.   How did you get to understand, or did you understand, and from whom did you receive information, if from any person, that the convention would be held in Red Cliff?

"A.   I depended entirely upon the secretary for the minutes.

"Q.   How did you know the convention was to be held in Red Cliff on Monday?

"A.   Because I depended entirely on the secretary for the minutes, as I stated before.

"Q.   Did you learn from the secretary's minutes that the convention would reconvene in Red Cliff on Monday?

"A.   I certainly did, or I should not have been there.

"Q.   You say the secretary told you that the convention would meet in Red Cliff on Monday?   Is that what I understand?

"A.   I said I depended on the minutes of the secretary.

"Q.   There was no motion made that the convention would adjourn to meet in Red Cliff on Monday?

"A.   I don't understand.

"Q.   There was no motion made that that convention adjourned to meet in Red Cliff on Monday?   Did you understand any such motion?

"A.   I believe I said there were so many objections raised it was difficult to determine those things.

"Q.   Do you remember whether there was or was not any such motion as to adjourn that convention to meet in Red

Cliff on Monday? Did you entertain or put any such motion?

"A. I don't remember all those things.

"Q. Do you remember any of those things?

"A. It is indefinite."

Mr. Collins stated, "Mr. Pay, of Eagle, got up and made a motion that we adjourn until Monday noon. That was carried."

He was further interrogated and answered as follows:

"Q. Do you remember whether or not in that motion made by Mr. Pay the time and place was set for holding the continuation of that convention?

"A. I could not, but I understood there was a motion to that effect.

"Q. Were yon in the convention when the motion to adjourn was put?

"A. I was; voted on it.

"Q. Did you remain in the convention hall until the chair announced the fact that the convention had adjourned?

"A. Yes, sir.

"Q. Your understanding is, that motion was made to adjourn until 12 o'clock Monday to Red Cliff?

"A. Yes, sir.

"Counsel for petitioner: I would rather have him state the facts, instead of his understanding.

"The Court: He has said that he cannot say exactly what did occur, but that is his understanding. That is as near as a witness can come to anything."

From this evidence, in connection with the copy of the minutes which was excluded, it is apparent that the finding of the trial court was manifestly against the weight of the testimony on the subject of the adjournment of the Gilman convention. The minutes indicate that it adjourned, as petitioner contends, without naming any place to meet. The witnesses testifying regarding this matter who assume to

recollect anything on the subject (except their understanding), are quite clear that the motion to adjourn did not name any place of meeting. Oters who testify to the effect that the convention was to reconveneed at Red Cliff do not state that the motion to adjourn so provided, but indicate from their statements, just as the copy of the minutes does, that there seems to have been an understanding between some of the delegates after the adjournment, that they would meet at Red Cliff on Monday following. The convention having adjourned without designating any particular place where it would reconvene, it would follow, as a matter of law, that it should meet at the place where the convention was being held. Any action on the part of the delegates, unless acquisced in by all, after such an ajournment, looking towards meeting elsewhere, would not be binding upon the convention. It follows, therefore, that the meeting at Red Cliff was without authority, and whatever action those there assembled may have taken could not undo the action of the meeting at Gilman. The judgment of the district court is reversed, and judgment here directed that the respondent county clerk and recorder of Eagle county, do cause to be printed upon the official hallot the name of petitioner as the nominee of the Democratic party of that county, for representative to the Thirteenth General Assembly.

*Judgment reversed.*